AMERICAN LACE MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8293.   Promulgated October 1, 1927.

Petitioner's invoices to customers within the United States all contain as a statement of terms of sale the phrase " 7%—10 days— 60 extra." Purchasers pay the face of such invoices, less 7 per cent, regardless of settlement. *Held*, that a deduction of 7 per cent from the total of such invoice amounts is proper in the computation of gross sales for the taxable year.

*George E. Bradbury, Esq.*, and *F. H. Bryan, Esq.*, for the petitioner.

*J. E. Marshall, Esq.*, for the respondent.

The Commissioner has asserted a deficiency in income and profits tax for the year 1921 in the amount of $3,081.11, all of which is in controversy. The only error alleged by the petitioner is " that the Commissioner has not allowed the deduction claimed by the petitioner covering discounts on its 1921 sales unpaid at the close of 1921."

### FINDINGS OF FACT.

The petitioner is an Ohio corporation with its principal office at Elyria, where it is engaged in the manufacture and sale of laces. Invoices of all sales to customers within the United States contain, as a statement of terms, the phrase " 7%—10 days—60 extra," which is the ordinary and usual method of billing employed in the lace business.

On December 31, 1921, the petitioner had on its books, against customers within the United States, accounts receivable in the amount of

$97,476.85, which represented gross of sales to such customers which had been invoiced and charged, as above indicated, and were unpaid at that date. In its income and profits-tax return for 1921, in the computation of its gross income, the petitioner deducted 7 per cent of this amount, or $6,823.38. Upon audit of such return the Commissioner included the amount so deducted in gross income and determined the deficiency in controversy.

OPINION.

LANSDON: All the facts pertinent to the issues herein are either admitted by the respondent or proved by the evidence adduced by the petitioner. The only question for us to answer is whether the 7 per cent allowance to customers was a trade discount arising out of market conditions or a cash discount made to expedite payments for merchandise purchased by customers.

The petitioner contends that the billing, which it proves is a trade custom in the lace business, indicates a trade discount and that the actual sales represented by all its invoices to customers within the United States was, in all cases, 7 per cent less than the figures at which its merchandise was invoiced. The evidence in support of this contention is convincing, and it follows that the deductions claimed are allowable either in reducing the amount of gross income for the year in which sales and charges are made or as business expenses to be applied against income for the year in which payments are made.

Standard accounting authorities sustain the contention of the petitioner. Colonel Montgomery in his work, entitled, "Audit Theory and Practice," vol. 1, p. 331, says:

Many so-called cash discounts are 7% flat. When such a rate is used it is not logical to deal with it in any other way than as a deduction from sales. The concern making such sale should deduct the discount (in an aggregate sum, if more convenient) from outstanding accounts and the purchasers should deduct the discount from their cost prices and from their inventories. The rule is a somewhat rough and ready one, but it is accurate enough. It is not inflexible, but should be followed unless a better general rule can be devised. In defining " cost and net sales " there must be some uniformity, even though precise formulae are not always possible.

At page 533 of the same volume the author says:

Trade discounts should be deducted directly from purchases on the one hand, and from sales on the other hand, that is, no ledger account should be kept for trade discounts. The term itself rarely appears on books of account.

In *Appeal of Thomas Shoe Co.*, 1 B. T. A. 124, in which the Board has passed on a similar question in harmony with the position of this petitioner, we say:

It also appears that, by trade practice, as abundantly proven by evidence, these discounts are, as a rule, actually deducted in making payments for goods, whether payment is made on the due date or not. The real nature of a trans-

action is to be judged by all the evidence, not by isolated items or partial extracts.

The evidence is conclusive that customers of the petitioner always deducted 7 per cent from the face of their invoices entirely regardless of the date of payment. To our minds this means that the petitioner's sales price to be used as the basis for computing gross income from sales was always 7 per cent less than the invoice figures. We are of the opinion, therefore, that the deduction of $6,823.38 from the gross amounts of accounts receivable for merchandise sold to customers within the United States was necessary in order to ascertain the true amount of the gross sales of the petitioner for the taxable year.

*Judgment will be entered for the petitioner on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN and ARUNDELL.